Schneider *v.* Sears, Roebuck and Co., Appellant.

Argued June 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*Anthony S. Minisi,* with him *Bernard M. Borish,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*Herbert L. Floum,* with him *Herman Weiner,* for appellee.

OPINION BY WATKINS, J., September 16, 1965:

In this workmen's compensation case the Court of Common Pleas No. 5 of Philadelphia County dismissed the appeal of Sears, Roebuck and Co., the defendant-appellant, from the decision of the Workmen's Compensation Board allowing the petition of Ernest C. Schneider, the claimant-appellee, to set aside a final receipt. The company appealed from this decision and from the entry of judgment by the court below on the compensation award.

The claimant injured his right knee in an accident in the course of his employment on February 8, 1956. He was employed as a Division Head in the company warehouse. Open agreements were executed by the parties and he has received payments for total disability for intermittent periods. The final receipt in issue was executed in July 1959. It is agreed that the

claimant was totally disabled as of November 27, 1959 and the question is whether the accident and injury is the cause of the disability.

The procedural history of this case is worthy of notice. The original agreement was executed on February 21, 1956, by which the beginning of disability was fixed as of February 9, 1956. A final receipt was executed about the same time by which the claimant accepted 2/7 of a week as disability payments. A supplemental agreement, which we designate No. 2, cancelled the first final receipt by stating disability resumed on April 4, 1956. Final receipt No. 2 was executed October 29, 1956 ending disability as of October 23, 1956. Final receipt No. 3 was executed November 6, 1956 ending disability as of November 5, 1956. Supplemental agreement No. 3 was executed on December 3, 1956 which cancelled final receipts Nos. 2 and 3 and set forth the following: "Returned to work 10/24/56—disability resumed 11/26/56—employe returned to work 11/27/56—disability resumed 11/29/56." Final receipt No. 4 dated January 22, 1957 and final receipt No. 5 dated January 22, 1957 ended disability as of January 21, 1957. Supplemental agreement No. 4 cancelled final receipts Nos. 4 and 5 and disability resumed September 5, 1957. Final receipt No. 6 ended disability as of October 6, 1958. Supplemental agreement No. 5 dated June 23, 1959 resumed disability as of June 15, 1959 and cancelled final receipt No. 6. Final receipt No. 7, which is in issue, undated but evidently signed in July 1959, ended disability as of October 6, 1958 and stated that a total of 100 1/7 weeks had been paid in the amount of $3222.14.

It is obvious from this record that the claimant made every effort to return to work and the number of agreements and final receipts executed were enough to convince the claimant that the signing of such re-

ceipts was perfunctory and that a recurrence of disability would automatically restore compensation.

On November 28, 1959 claimant suffered a coronary occlusion which totally disabled him. On March 23, 1960 in applying for disability insurance benefits from Metropolitan Life Insurance Company he stated that his coronary disease was not due to the accident. After he had received several payments under the policy, on July 12, 1960 he petitioned to set aside the final receipt alleging mistake of fact and law and that his present disability was due to the accident of February 8, 1956.

His effort to work despite his disability is well stated by Commissioner Geer of the Workmen's Compensation Board, as follows: "In his testimony, however, claimant relates a story of his effort to work against a total disability. It is a story that is almost painful to read." This is the case of a man who suffered all kinds of painful agony in his leg and back, right up to the time of the present petition. Many times his leg locked at work and at home and he would fall to the floor; on November 9, 1959 medicine cabinets fell on him at work, throwing him against an empty palate; the cabinets struck his incision and again caused his hospitalization. There is a history of continuous medical treatment from various doctors and hospitals; the application and reapplication of casts that were placed six inches above the ankle to about ten inches above the hip; and surgery was performed on July 5, 1956 and again on November 4, 1958.

The referee dismissed this petition to set aside the final receipt holding that his present disability was unrelated to the accidental injury. The board, on appeal, remanded for the purpose of the appointment of an impartial physician. After such appointment and another hearing, at which the impartial physician testified, the referee again dismissed the petition. On ap-

peal the board reversed the referee, set aside the final receipt and awarded compensation.

Section 434 of the Workmen's Compensation Act, as amended by the Act of February 28, 1956, P. L. (1955) 1120, 77 PS §1001, provides, ". . . That the board, . . . may, at any time within two years from the date to which payments have been made, set aside a final receipt, upon petition filed with the board, if it be conclusively proved that all disability due to the accident in fact had not terminated." This is less exacting language than under the 1959 amendment and it governs this case because it was in effect at the time of the signing and delivery of the final receipt in July 1959. *Uglaky v. Hudson Coal Co.,* 152 Pa. Superior Ct. 301, 31 A. 2d 743 (1943).

The important determination, therefore, is whether or not in fact, all disability due to the accident had terminated. The board found: "That on November 28, 1959, the claimant was still totally disabled as a result of the accident he sustained on February 8, 1956, . . . .". The burden of proof is on the claimant and the term "conclusive proof" requires him to sustain that burden by evidence that is clear and convincing. *Bun v. Central Pa. Quarry, S. & C. Co.,* 194 Pa. Superior Ct. 630, 169 A. 2d 804 (1961).

The court below summarized the medical testimony essential to the claimant's burden of proof, upon which the board relied, as follows:

". . . Dr. John J. Curtin, called as an impartial physician appointed by the Workmen's Compensation Board, stated that he examined the claimant on two occasions and rendered the following diagnosis: Coronary insufficiency due to old myocardial infarction, hypertensive cardiovascular disease, arteriosclerotic vascular disease, old history, painful right leg with weakness. In summation he testified that in his opinion this man still has right leg problems which probably are insolva-

ble; that petitioner should be compensated because the right leg condition originated with injury to his knee as proven by his previous hospitalization. The physician said Schneider couldn't be gainfully employed without the coronary disease. He pointed out that the arteriosclerosis is diffused, probably involves the whole body including the leg. This diminishes the blood supply to various parts of the body and causes pain, but the right and left legs get the same blood supply and the left leg is not painful. Therefore, if the pain came from short supply of blood, the pain would be the same. This appointed physician believes the reason for the right leg pain is the damage suffered to that leg and the operation that petitioner underwent. He said that there was better circulation in the left leg. This doctor said that the arteriosclerosis aggravated the leg condition but insisted that the disability was connected to the accident on February 8, 1956.

"Dr. Norman J. Skversky stated that petitioner had a recurrent disabling phlebitis of the right leg secondary to trauma. He termed it a traumatic phlebitis.

"The defendant called Dr. J. H. Davidson who stated that he did not see any thrombophlebitis, and that the claimant was not disabled from the accident but from arteriosclerotic disease involving the large artery supplying the right leg and coronary artery supplying the heart muscle."

From this medical testimony, including the opinion of Dr. Curtin the impartial physician, that he "couldn't be gainfully employed with or without the coronary" the board found as a fact that he was certainly disabled as a result of the accident on February 8, 1956. The determination of factual matters including the weighing of conflicting testimony is for the board, which is the ultimate fact finder; as is also the determination whether or not he has met his burden of proof. *McFarlane v. Mellon-Stuart Co.,* 205 Pa. Su-

perior Ct. 66, 208 A. 2d 40 (1965); *Krasznay v. Milton Ross Metals Co.,* 204 Pa. Superior Ct. 94, 203 A. 2d 393 (1964); *Dixon v. Shapiro,* 203 Pa. Superior Ct. 535, 538, 201 A. 2d 231, 232 (1964).

We agree with the court below that there is sufficient competent evidence to support the findings of the board that he has sustained his burden by clear and convincing proof that all disability had not, in fact, ceased. That is all that is necessary to set aside a final receipt under the Act as amended. *Bun v. Central Pa. Quarry, S. & C. Co.,* supra, at page 635.

The appellant further argues that the award of the Workmen's Compensation Board should have been for the specific loss of the use of the leg under §306(c) of the Act, 77 PS §513 instead of under §306(a) of the Act, 77 PS §511. However, throughout this record, in all the agreements, in all the final receipts, and in all the pleadings, disability is ending or resuming and specific loss is not involved or mentioned. At no time was there a petition to modify the agreement and the record does not disclose that this question was ever raised below, before the referee, the board or the court.

It is true that "strictness of pleading however in Workmen's Compensation cases is not required. If claimant is entitled to relief under any section of the statute his petition will be considered as filed under that section." This also applies to the employer. *Fehr v. Y.M.C.A.,* 201 Pa. Superior Ct. 107, 192 A. 2d 143 (1963). However, this does not mean that the court, on appeal, may substitute its findings and its determination as to whether or not the burden of proof has been sustained in a matter that has not been considered by the fact finders. The burden of proof in the petition to set aside the final receipt was on the claimant; while the burden of proof of specific loss was on the defendant. *Monarko v. Culmerville Coal Co.,* 159 Pa. Superior Ct. 126, 47 A. 2d 295 (1946).

In *Curran v. Knipe & Sons, Inc.*, 185 Pa. Superior Ct. 540, 138 A. 2d 251 (1958), the claimant broke a leg and received compensation for total disability. There was a petition to modify on the ground that he was no longer totally disabled. The compensation authorities held that he was still disabled and dismissed the petition. Then a second petition for modification was filed which alleged the loss of the use of the leg. The claimant contended that because the defendant failed to appeal from the dismissal of the first petition that he had lost the right to proceed on the second. This Court held at pages 544, 545:

"The answer to this contention is that the questions raised in the two petitions are not only different questions, but also depends upon different determinations. Loss of wages and capacity to work are involved in the question raised in the first petition, but they are not involved in the question raised in the second petition. It is possible for one to be totally disabled by a leg injury, and still not have suffered the permanent loss of use of the leg. It is also possible to have suffered the permanent loss of use of the leg and not be totally disabled. What was litigated on the first petition was the extent of the disability. The defendant, and the claimant if it should happen to be to his advantage, are entitled to have determined whether or not the claimant has lost the permanent use of his leg. This question had never been considered by the referee or the board until they acted upon the second petition.

"The burden is upon the defendant to support the allegations of its petition to modify. He must establish by a fair preponderance of the evidence that the claimant has suffered the permanent loss of the use of his leg. Monarko v. Culmerville Coal Co., 159 Pa. Superior Ct. 126, 47 A. 2d 295 (1946); Snyder v. Hoffman, 159 Pa. Superior Ct. 392, 48 A. 2d 78 (1946).

"Whether the defendant has met this burden is a question of fact for the referee and the board and not for the court. A court is not permitted to weigh the evidence or to substitute its findings for those of the compensation authorities if there is legally competent evidence to support them." (Citing cases)

In the instant case the question litigated was whether or not the claimant had sustained his burden of proof in a petition to set aside a final receipt by clear and convincing evidence that all disability due to the accident had not ended. The question of specific loss was not raised below and the referee and the board never considered or decided that question. If it had been before the compensation authorities the test to be applied was whether the claimant suffered the loss of the use of the injured member for all practical intents and purposes. *Curran v. Knipe & Sons, Inc.,* supra. There was no effort on the part of the defendant to assume this burden and his answer to the petition states "petitioner's loss of earning power and disability is solely the result of his coronary condition and is unrelated to the accident of February 8, 1956". This negates any intention on the part of the defendant to raise the specific loss question.

Judge ULLMAN of the Court of Common Pleas No. 3 of Philadelphia County in *Corrado v. Mattioli,* 21 Pa. D. & C. 2d 775, held that where the only disability is that resulting from a specific loss under §306(c) it is improper for the defendant to require the claimant to execute a final receipt since the defendant is relieved of paying further compensation not for the reason that disability ceased but for the reason that the claimant has been paid the maximum compensation for which the defendant is liable. The execution of so many final receipts also negates the intention of the defendant to claim a specific loss under §306(c).

Judgment affirmed.

CONCURRING OPINION BY MONTGOMERY, J.:

Although I am not persuaded that the coronary attacks experienced by this claimant on several occasions had any connection with the accident and injury to his leg, I am convinced that there was remaining disability from the leg injury at the time the last "final" receipt was signed. Accepting the testimony of Dr. Curtin, the impartial expert appointed by the Workmen's Compensation Board, that claimant could not work because of the leg injury, with or without the coronary condition, the disability at that time was total.

Therefore, I concur with the majority that it was proper for the board to set aside that final receipt and to place claimant on a total disability status. If the situation later resolves itself into one entitling appellants to prove a permanent specific loss of the use of the leg, they will not be precluded from taking the necessary action to have the case so adjudicated.